## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
-----------------------------x
                             :
JOSEPH JOHN DEMARS           :      Civ. No. 3:18CV00432(SALM)
                             :
v.                           :
                             :
NANCY A. BERRYHILL,          :      March 31, 2019
ACTING COMMISSIONER, SOCIAL  :
SECURITY ADMINISTRATION      :
                             :
-----------------------------x
```

## RULING ON CROSS MOTIONS

Plaintiff, Joseph John Demars, brings this appeal pursuant to §205(g) of the Social Security Act ("the Act"), as amended, seeking review of a final decision by the Acting Commissioner of the Social Security Administration (the "Commissioner") denying his application for Disability Insurance Benefits ("DIB"). Plaintiff has moved for an order reversing the decision of the Commissioner, or in the alternative, for remand [Doc. #27]. Defendant has filed a motion for an order affirming the decision of the Commissioner [Doc. #33]. Plaintiff has filed a "Notice Regarding the Commissioner's Statements of Medical Evidence" [Doc. #35]. This document contains some argument, and the Court will construe it as plaintiff's timely reply.

For the reasons set forth below, plaintiff's Motion to Reverse or Remand **[Doc. #27]** is **DENIED,** and defendant's Motion

for an Order Affirming the Decision of the Commissioner **[Doc. #33]** is **GRANTED**.

I.  <u>**PROCEDURAL HISTORY**</u>[1]

Plaintiff filed an application for DIB on September 8, 2014,[2] alleging disability beginning January 6, 2004, when plaintiff "slipped off a truck at work and twisted his right knee." Doc. #27-2 at 1; <u>see</u> Certified Transcript of the Administrative Record, Doc. #17 and attachments, compiled on May 13, 2018, (hereinafter "Tr.") at 262-265. Plaintiff's application was denied initially on October 1, 2014, <u>see</u> Tr. 102-111, and upon reconsideration on January 14, 2015, <u>see</u> Tr. 112-122.

On August 11, 2016, plaintiff, represented by Attorney Christopher W. Dilworth,[3] appeared and testified before Administrative Law Judge ("ALJ") Matthew Kuperstein. <u>See</u> Tr. 61-

---

[1] Plaintiff submitted a statement of material facts with his motion to reverse or remand. <u>See</u> Doc. #27-2. "The Commissioner adopt[ed] Plaintiff's recitation of the administrative proceedings[,]" and provided additional facts with citations to the administrative record. Doc. #33 at 2; <u>see</u> <u>id.</u> at 2-9. "The plaintiff recognizes that the [Commissioner's] evidentiary references are found in the record according to the citations provided." Doc. #35 at 1.

[2] The ALJ's decision lists the application date as August 18, 2014. <u>See</u> Tr. 26. This discrepancy does not affect the Court's analysis.

[3] Plaintiff is now represented by Attorney Gary W. Huebner. <u>See</u> Doc. #27-1 at 13.

82, 85-89. Vocational Expert ("VE") Edmond J. Calandra testified telephonically at the hearing. See Tr. 83-85, 90-99. On June 13, 2017, ALJ Martha Bower issued an unfavorable decision pursuant to HALLEX I-2-8-40, as ALJ Kuperstein was unavailable to issue a decision.[4] See Tr. 26-39. On January 9, 2018, the Appeals Council denied plaintiff's request for review, making the ALJ's June 13, 2017, decision the final decision of the Commissioner. See Tr. 1-7. The case is now ripe for review under 42 U.S.C. §405(g).

## II.  **STANDARD OF REVIEW**

The review of a Social Security disability determination involves two levels of inquiry. First, the court must decide whether the Commissioner applied the correct legal principles in making the determination. See Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998). Second, the court must decide whether the determination is supported by substantial evidence. See id. Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The reviewing court's responsibility is to ensure

---

[4] The Court refers to ALJ Bower when discussing "the ALJ" in this ruling. When referring to ALJ Kuperstein, the Court does so by name.

that a claim has been fairly evaluated by the ALJ. See Grey v.
Heckler, 721 F.2d 41, 46 (2d Cir. 1983).

The Court does not reach the second stage of review –
evaluating whether substantial evidence supports the ALJ's
conclusion – if the Court determines that the ALJ failed to
apply the law correctly. See Norman v. Astrue, 912 F. Supp. 2d
33, 70 (S.D.N.Y. 2012) ("The Court first reviews the
Commissioner's decision for compliance with the correct legal
standards; only then does it determine whether the
Commissioner's conclusions were supported by substantial
evidence."). "Where there is a reasonable basis for doubt
whether the ALJ applied correct legal principles, application of
the substantial evidence standard to uphold a finding of no
disability creates an unacceptable risk that a claimant will be
deprived of the right to have [his] disability determination
made according to the correct legal principles." Johnson v.
Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set
forth with sufficient specificity to enable [a reviewing court]
to decide whether the determination is supported by substantial
evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir.
1984). The ALJ is free to accept or reject the testimony of any
witness, but a "finding that the witness is not credible must
nevertheless be set forth with sufficient specificity to permit

4

intelligible plenary review of the record." <u>Williams ex rel.</u>
<u>Williams v. Bowen</u>, 859 F.2d 255, 260-61 (2d Cir. 1988). It is
well established that "an ALJ's credibility determination is
generally entitled to deference on appeal." <u>Selian v. Astrue</u>,
708 F.3d 409, 420 (2d Cir. 2013); <u>see</u> <u>also</u> <u>Kessler v. Colvin</u>, 48
F. Supp. 3d 578, 595 (S.D.N.Y. 2014) ("A federal court must
afford great deference to the ALJ's credibility finding, since
the ALJ had the opportunity to observe the claimant's demeanor
while the claimant was testifying." (citation and internal
quotation marks omitted)); <u>Pietrunti v. Dir., Office of Workers'</u>
<u>Comp. Programs</u>, 119 F.3d 1035, 1042 (2d Cir. 1997) ("Credibility
findings of an ALJ are entitled to great deference and therefore
can be reversed only if they are patently unreasonable."
(citation and internal quotation marks omitted)).

It is important to note that in reviewing the ALJ's
decision, this Court's role is not to start from scratch. "In
reviewing a final decision of the SSA, this Court is limited to
determining whether the SSA's conclusions were supported by
substantial evidence in the record and were based on a correct
legal standard." <u>Talavera v. Astrue</u>, 697 F.3d 145, 151 (2d Cir.
2012). **"[W]hether there is substantial evidence supporting the**
**appellant's view is not the question here; rather, we must**
**decide whether substantial evidence supports <u>the ALJ's</u>**

**decision**." <u>Bonet ex rel. T.B. v. Colvin</u>, 523 F. App'x 58, 59 (2d Cir. 2013).

## III. <u>SSA LEGAL STANDARD</u>

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits. 42 U.S.C. §423(a)(1).

To be considered disabled under the Act and therefore entitled to benefits, plaintiff must demonstrate that he is unable to work after a date specified "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Such impairment or impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A); <u>see also</u> 20 C.F.R. §404.1520(c) (requiring that the impairment "significantly limit[] ... physical or mental ability to do basic work activities[]" to be considered "severe").[5]

---

[5] Some of the Regulations cited in this decision, particularly those applicable to the review of medical source evidence, were amended effective March 27, 2017. Those "new regulations apply only to claims filed on or after March 27, 2017." <u>Smith v.</u>

There is a familiar five-step analysis used to determine if a person is disabled. See 20 C.F.R. §404.1520. In the Second Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam). If and only if the claimant does not have a listed impairment, the Commissioner engages in the fourth and fifth steps:

> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the

Comm'r, 731 F. App'x 28, 30 n.1 (2d Cir. 2018) (summary order). Where a plaintiff's claim for benefits was filed prior to March 27, 2017, "the Court reviews the ALJ's decision under the earlier regulations[.]" Rodriguez v. Colvin, No. 3:15CV1723(DFM), 2018 WL 4204436, at *4 n.6 (D. Conn. Sept. 4, 2018); White v. Comm'r, No. 17CV4524(JS), 2018 WL 4783974, at *4 (E.D.N.Y. Sept. 30, 2018) ("While the Act was amended effective March 27, 2017, the Court reviews the ALJ's decision under the earlier regulations because the Plaintiff's application was filed before the new regulations went into effect." (citation omitted)).

Secretary then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of proof as to the first four steps, while the Secretary must prove the final one.

Id.

"Through the fourth step, the claimant carries the burdens of production and persuasion, but if the analysis proceeds to the fifth step, there is a limited shift in the burden of proof and the Commissioner is obligated to demonstrate that jobs exist in the national or local economies that the claimant can perform given his residual functional capacity." Gonzalez ex rel. Guzman v. Dep't of Health and Human Serv., 360 F. App'x 240, 243 (2d Cir. 2010) (citing 68 Fed. Reg. 51155 (Aug. 26, 2003)); Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam)). "Residual functional capacity" ("RFC") is what a person is still capable of doing despite limitations resulting from her physical and mental impairments. See 20 C.F.R. §404.1545(a)(1).

"In assessing disability, factors to be considered are (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978). "[E]ligibility for benefits is to be determined in light of the fact that the Social Security Act is a remedial statute to be

broadly construed and liberally applied." Id. (citation and internal quotation marks omitted).

## IV.   **THE ALJ'S DECSION**

Following the above-described five-step evaluation process, the ALJ concluded that plaintiff was not disabled under the Act. See Tr. 35. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity during the relevant period, between his alleged onset date of January 6, 2004, and his last insured date of March 31, 2009. See Tr. 28. At step two, the ALJ found that plaintiff had the severe impairments of "obesity, degenerative joint disease of the right knee with a history of knee replacement, and osteoarthritis of the left knee[.]" Tr. 29.

At step three, the ALJ found that plaintiff's impairments, either alone or in combination, did not meet or medically equal the severity of any of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. See Tr. 29. The ALJ specifically considered Listing 1.02 (dysfunction of a major weight-bearing joint due to any cause). See Tr. 29. Before moving on to step four, the ALJ found plaintiff had the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) except: The claimant was limited to only occasional use of foot controls with the right lower extremity, to only occasional climbing of ramps or stairs, balancing, and stooping, and to no climbing of ladders, ropes, or scaffolds, kneeling, crouching, or crawling.

Tr. 29.

At step four, the ALJ concluded that plaintiff is unable to perform any of his past relevant work. See Tr. 37. At step five, and after considering the testimony of the VE as well as plaintiff's age, education, work experience, and RFC, the ALJ found "there were jobs that existed in significant numbers in the national economy that plaintiff could have performed" during the relevant period. Tr. 37.

## V. DISCUSSION

Plaintiff claims that the ALJ erred by:

1. Concluding that plaintiff's lower right extremity impairment did not meet Listings 1.02 and/or 1.03, see Doc. #27-1 at 3-6;

2. Failing to properly apply the treating physician rule to the May 13, 2016, medical opinion of Dr. Vincent Williams, see id. at 9-12; and

3. Failing to properly apply SSR 02-1p, relating to the evaluation of plaintiff's obesity at step three and subsequent steps, see id. at 6-9.

Before turning to plaintiff's arguments, the Court pauses briefly to address plaintiff's Workers' Compensation claim, and the impact that claim had on the development of plaintiff's medical records. Plaintiff alleges that his disability began on January 6, 2004, when he slipped at work and twisted his right knee. See Tr. 26; Doc. #27-2 at 1. At the time, plaintiff was working as a cement truck driver, and needed use of his right

leg to operate the truck's foot pedals continuously. See Tr. 62. The ALJ expressly acknowledged in her RFC determination that plaintiff, during the relevant period, "was limited to only occasional use of foot controls with the right lower extremity," meaning that "the demands of the claimant's past relevant work exceeded the residual functional capacity." Tr. 29; Tr. 37.

Plaintiff filed a claim for Worker's Compensation benefits, and ultimately settled that claim. See Tr. 257-61. Many of the medical reports generated during the relevant time frame provided an assessment of plaintiff's status -- categorizing him as temporarily disabled, permanently disabled, or capable of performing sedentary work -- directly to plaintiff's worker's compensation carrier. See, e.g., 480, 488.

As the ALJ noted repeatedly in her decision: "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." 20 C.F.R. §404.1527(d)(1). SSA Regulations state that the Commissioner is "responsible for making the determination or decision about whether you meet the statutory definition of disability. ... [The SSA] will not give any special significance to the source of an opinion on issues reserved to the Commissioner[.]" 20 C.F.R. §§404.1527(d)(1), (d)(3) (emphasis added).

As ALJ Kuperstein explained to plaintiff at the hearing:

I see you did have a Workers' Compensation matter that
recently settled, but this is independent of that, and,
and Workers' Compensation, if you can't do <u>your past
work</u>, then they, they pay you money and so forth, but
this is different. <u>I need to determine if there's other
work you could have done</u>, even work that didn't involve,
you know, that you could have done from a seated
position.

Tr. 62 (emphases added). Additionally, as ALJ Bower noted in her

decision, "it is not clear as to whether statements [assessing

plaintiff's disability status] are referencing the claimant's

specific past work or all work." Tr. 36. ALJ Bower, as discussed

below, appropriately considered the reports of plaintiff's

physicians, even though she did not give deference to their

statements classifying plaintiff as disabled or unable to work.

### A. Listings 1.02 and 1.03

In discussing, at step three, whether plaintiff met any of

the listings, the ALJ did only three things. First, she

acknowledged that she was obligated to consider plaintiff's

obesity under SSR 02-1p in making her determination; second, she

outlined the criteria of Listing 1.02; and third, she concluded:

"The claimant's impairment does not meet these conditions." Tr.

29.

Plaintiff argues that the ALJ erred in not finding that

plaintiff met Listing 1.02 and that the ALJ's single sentence

determination that plaintiff did not meet this listing was

legally insufficient. <u>See</u> Doc. #27-1 at 3-6. Plaintiff further

argues that the ALJ should have considered Listing 1.03 in addition to Listing 1.02. See Doc. 27-1 at 5-6. The Commissioner argues that the ALJ's decision should be affirmed because her reasoning for finding that plaintiff did not meet Listing 1.02 can be clearly gleaned from other portions of her decision, and those reasons also require a conclusion that the plaintiff did not meet Listing 1.03. See Doc. #33 at 13-22.

### 1. Inability to Ambulate Effectively

Listings 1.02 and 1.03 both place the burden on plaintiff to demonstrate an "inability to ambulate effectively[.]" 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 1.02, 1.03. The Regulations define this term:

> Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning [] to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. ... To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The

> ability to walk independently about one's home without
> the use of assistive devices does not, in and of itself,
> constitute effective ambulation.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 1.00(B)(2)(b).

When discussing plaintiff's RFC, the ALJ expressly
discussed plaintiff's ability to ambulate effectively.
Specifically, the ALJ noted that plaintiff: (1) was able to
drive, see Tr. 30; (2) used a cane (singular) from 2015-2017,
and used crutches (plural) intermittently throughout his course
of knee surgeries, see Tr. 30; but (3) "needed only minimal use
of crutches or a cane during the period in question[,]" Tr. 32;
and (4) was "able to ambulate without" using his crutches, Tr.
34. The ALJ also expressly considered plaintiff's obesity,
stating that plaintiff: "was able to ambulate and carry his
weight" in spite of his "diffuse[]" pain. Tr. 34 (emphasis
added).

Pointing to records documenting his knee pain, joint
stiffness, and (periodic) need to use crutches and/or a cane,
plaintiff argues that he has demonstrated that he is unable to
ambulate effectively. See Doc. #27-1 at 4. While the records
identified by plaintiff, and discussed by the ALJ, document that
there were discrete periods where plaintiff was unable to
ambulate effectively, that alone is not enough to meet
plaintiff's burden. See 42 U.S.C. §423(d)(1)(A). A disability is
a condition that is "expected to result in death or which has

14

lasted or can be expected to last for a continuous period of not less than 12 months." Id. There is substantial evidence to support the ALJ's conclusion that plaintiff's inability to ambulate effectively between the relevant dates (January 6, 2004, to March 31, 2009) did not, and was not expected to, last for more than twelve continuous months.

Plaintiff's medical records document that his inability to ambulate was intermittent. See Tr. 30, 32-34; see also Doc. #33 at 17-21. For example, multiple records covering the relevant time period discuss plaintiff's ability to walk. These records note plaintiff's (typically antalgic) gait, and whether or not he walked with a limp, or that his knee was stable, but they make no reference to the use of any assistive device. See Tr. 706-07, 714, 720, 732, 734, 766. The physicians who wrote these reports did make note when plaintiff needed to use crutches, and, similarly, expressly stated on several occasions that he was able to ambulate without them. See, e.g., Tr. 479, 469, 725, 762, 759. These records are substantial evidence supporting the ALJ's express conclusion that plaintiff did not meet Listing 1.02, and render harmless any error in her failure to consider whether he met Listing 1.03.

Plaintiff often needed to use a single cane or a knee brace. See Tr. 760, 698, 711, 749, 935, 770, 487. However, a claimant is not inherently unable to ambulate effectively when

15

he requires use of an assistive device that does not limit his use of both upper extremities. See Hopkins v. Colvin, No. 13CV4803(AT)(AJP), 2014 WL 2526837, at *17 (S.D.N.Y. June 5, 2014), report and recommendation adopted, 2014 WL 4392209 (S.D.N.Y. Sept. 5, 2014) (knee brace); Hilliard v. Colvin, No. 13CV1942(AJP), 2013 WL 5863546, at *13 (S.D.N.Y. Oct. 31, 2013) ("one cane (not two)[]"). It is possible for a claimant to demonstrate an inability to ambulate effectively without showing the need to use assistive devices that limit the function of both upper extremities. See Smith v. Colvin, No. 15CV1166(AWT), 2017 WL 634497, at *6 n.8 (D. Conn. Feb. 16, 2017). Here, however, the ALJ did not rely solely on plaintiff's use or non-use of devices in reaching her conclusion regarding ability to ambulate effectively. Plaintiff's own testimony confirmed that his bedroom had been on the second floor of his home during the relevant period, evincing his ability to climb stairs. See Tr. 70. As noted by the ALJ, plaintiff is able to drive, and does so regularly. See Tr. 30, 66. The ALJ also focused on statements from plaintiff's physicians that plaintiff had no pain when resting, had adequate knee flexion, was able to participate in physical therapy five times a week, and treated with "a home exercise program [and] activity modulation[.]" Tr. 33-35.

It appears that plaintiff's condition may have continued to deteriorate after his last insured date, as evinced by his

inability to complete a journey to Vermont in 2013, see Tr. 30,
74, and the relocation of his bedroom to the first floor in
2010, see Tr. 70, because he had "increased difficulty climbing
the stairs[,]" Tr. 30. But the question before this Court is
whether substantial evidence supports the ALJ's conclusion that
plaintiff was not disabled between January 6, 2004, and March
31, 2009. As to plaintiff's arguments regarding Listings 1.02
and 1.03, the Court finds that substantial evidence supports the
ALJ's conclusion that plaintiff failed to meet his burden of
showing that he had an "inability to ambulate effectively[]"
"for a continuous period of not less than 12 months[]" during
the relevant period. 42 U.S.C. §423(d)(1)(A); 20 C.F.R. § Pt.
404, Subpt. P, App. 1, Listing 1.02, 1.03.

   2. The ALJ's Analysis at Step Three

   The Commissioner does not contest that the ALJ's single
sentence statement that plaintiff did not meet Listing 1.02 --
standing alone -- provides insufficient support for her
conclusions, but contends that in the ALJ's "thorough and
detailed decision, the ALJ considered the criteria of the
Listing, and [her] reasoning and analysis for [her] finding at
step three can easily be gleaned from [her] decision." Doc. #33
at 13. As discussed above, the Court agrees.

   "[T]he absence of an express rationale does not prevent us
from upholding the ALJ's determination regarding appellant's

17

claimed listed impairments, since portions of the ALJ's decision
and the evidence before [her] indicate that [her] conclusion was
supported by substantial evidence." Berry v. Schweiker, 675 F.2d
464, 468 (2d Cir. 1982) (per curiam). Here, "[a]lthough the ALJ
did not explicitly discuss [specific listings], [her] general
conclusion (that [plaintiff] did not meet a listed impairment)
is supported by substantial evidence." Solis v. Berryhill, 692
F. App'x 46, 48 (2d Cir. 2017) (summary order). The ALJ
discussed plaintiff's ability to ambulate, a key component of
both listings. The fact that the ALJ elected not to repeat her
analysis both while discussing step three and while discussing
plaintiff's RFC does not constitute reversible error.

### B. The Treating Physician Rule

Plaintiff argues that the ALJ failed to give appropriate
weight, as required by the Treating Physician Rule, to a lower
extremities impairment questionnaire completed by Dr. Williams
in May 2016. See Doc. #27-1 at 9-12; Tr. 1264-71 (hereinafter
the "May 2016 Report"). In the May 2016 Report, Dr. Williams
opined that, since 2006, plaintiff has needed two canes, could
not sustain ambulation, could neither sit nor stand/walk for any
portion of a work day, and needed to elevate his right leg for
20-30 minutes of every hour. See Tr. At 1266-68. Plaintiff also
contends that the ALJ's explanation of the assignment of weight
was "conclusory" and therefore insufficient. See id. at 10. The

Commissioner argues that the ALJ's assignment of weight to this report complied with applicable law, and that the ALJ adequately considered the relevant factors. See Doc. #33 at 24-30. Plaintiff does not challenge the ALJ's assignment of weight to opinions of Dr. Williams dated 2006, 2007, 2008, and 2009,[6] but limits his argument to the May 2016 Report.[7]

> With respect to the nature and severity of a claimant's impairment(s), the SSA recognizes a treating physician rule of deference to the views of the physician who has engaged in the primary treatment of the claimant[.] According to this rule, the opinion of a claimant's treating physician as to the nature and severity of the impairment is given controlling weight <u>so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.</u>

---

[6] Unlike the May 2016 Report, these opinions were not detailed assessments of plaintiff's functional abilities but rather conclusory statements contained in Dr. Williams' treatment notes that plaintiff was disabled. See Tr. 707, 721, 726, 770, 772, 773, 793, 799, 810. After noting that these conclusions were "not entitled to any special significant weight[,]" (citing 20 C.F.R. 404.1527(e)(1)-(3)) the ALJ rejected the conclusions because it was "not clear as to whether [the] statements are referencing the claimant's specific past work or all work[,]" and because the statements were internally inconsistent, referencing plaintiff's ability to perform sedentary work, <u>see</u> Tr. 480, 793, 803, 904, 1001, 1003. Tr. 36. The Court notes that every report containing these statements was sent directly to plaintiff's Workers' Compensation carrier, which supports the ALJ's conclusion that the statements may have only been in reference to plaintiff's past work. See Tr. 707, 721, 726, 770, 772, 773, 793, 799, 810.

[7] Plaintiff does not challenge the ALJ's similar assignment of "little weight" to the disability questionnaires completed by Dr. Adrienne Parad in March 2015 and September 2016, each of which stated that plaintiff can only sit or stand for one hour each during an eight-hour work day, and that the need for such restrictions began on January 6, 2004. See Tr. 1134, 1430.

<u>Burgess v. Astrue</u>, 537 F.3d 117, 128 (2d Cir. 2008) (citations and quotation marks omitted) (emphasis added). The ALJ gave "little weight" to the May 2016 Report, and did not afford it controlling weight. <u>See</u> Tr. 36. Dr. Williams, plaintiff's treating orthopedic surgeon, is a treating physician under the applicable regulations. The ALJ acknowledged this, and the Commissioner does not contest that Dr. Williams' opinions regarding the nature and severity of plaintiff's impairments would be entitled to controlling weight, if they were well-supported and not inconsistent with other substantial evidence. <u>See</u> Doc. #33 at 25.

The ALJ expressly afforded "little weight" to Dr. Williams' May 2016, report because (1) it was "not 'not inconsistent' with the medical evidence;" and (2) "it was provided several years after the period in question[]" and was contradicted by other statements by Dr. Williams that were made during or closer to the relevant time period. Tr. 36. In evaluating Dr. Williams' other opinions, in the same section of her analysis, the ALJ made several observations that provide additional bases for discounting the May 2016 Report: (1) conclusions regarding disability are not medical opinions, but rather administrative findings, properly reserved to the Commissioner; (2) it was unclear whether Dr. Williams was familiar with the SSA's

"disability evaluation program or the evidence of record[;]" and
(3) some of Dr. Williams' statements were "internally
inconsistent," asserting both that plaintiff was totally
disabled and that he was capable of sedentary work. Tr. 36.

The Court finds that the record supports the ALJ's
assignment of little weight to Dr. Williams' May 2016 Report,
and the ALJ's decision not to assign controlling weight to Dr.
Williams' opinion therein.

The report at issue is a check-box questionnaire. Such
forms are "weak evidence at best[,]" and are "only marginally
useful for purposes of creating a meaningful and reviewable
factual record. Such form reports provide little reason to
afford much weight to a treating physician's opinion." Cote v.
Berryhill, No. 3:17CV01843(SALM), 2018 WL 4092068, at *14 (D.
Conn. Aug. 28, 2018) (citations and quotation marks omitted)
(collecting cases). The conclusory statements in the May 2016
Report that plaintiff was disabled are not afforded any special
weight. See 20 C.F.R. §§404.1527(d)(1), (d)(3).

As to the functional limitations described in the May 2016
Report, the ALJ properly concluded that the opinion was
inconsistent with other substantial evidence -- including Dr.
Williams' own contemporaneous notes. Dr. Williams' notes, and
the notes of other treating physicians, expressly acknowledge
plaintiff's ability to walk, even without any assistive devices,

see Tr. 706-07, 714, 720, 732, 734, 766, contradicting the May 2016 Report's conclusion that plaintiff is unable to stand or walk for any period of time, see Tr. 1267.

Dr. Williams' notes did not often include restrictions on plaintiff's mobility, and when they did, the restrictions were less restrictive than those suggested in the May 2016 Report. See Tr. 706 ("Apply ice for 20-30 minutes twice a day as needed[.]"); Tr. 734 ("His treatment will consist of activity modulation and NSAID's[.]"); Tr. 750 ("His treatment will consist of activity modulation and referral to physical therapy."); Tr. 763 ("His treatment will consist of activity modulation and use of a knee brace[.]"); Tr. 770 ("His treatment will consist of use of a knee brace and weight loss[.]"); Tr. 780 ("His treatment will consist of activity modulation and use of a knee brace[.]"); Tr. 786 ("His treatment will consist of a home exercise program, referral to physical therapy, NSAID's and use of a knee brace."); see also generally Tr. 696-850 (Exhibit 9F, referenced extensively by the ALJ: "Medical Records dated 7/19/2005 to 12/11/2012 from Center for Orthopedics"). As discussed above, Dr. Williams' notes also repeatedly and expressly contemplate plaintiff's ability to function in some form of sedentary work environment. See e.g. Tr. 480, 791, 803, 817, 1001. Dr. Williams' own notes from the relevant time period also provide no support for the conclusion in the May 2016

Report that, as early as 2006, plaintiff needed to elevate his leg for up to 30 minutes <u>every hour</u>. <u>See</u> Tr. 1268.

Plaintiff argues that the ALJ failed to provide proper support for discounting this opinion because:

> [T]he ALJ rejected Dr. Williams's questionnaire because "[a]s of February 2009, Dr. Williams had opined that the claimant was capable of sedentary work" (R. 36). On February 27, 2009, Dr. Williams actually wrote, "Mr. Demars is totally disabled. He is only capable of the most sedentary type of work, and given his lack of education or other skills, may not be employable" (R. 480). The plaintiff submits that the ALJ's reasoning in support of the weight to assign Dr. Williams's 2016 opinion does not constitute "good reasons" within the meaning of the regulation.

Doc. #27-1 at 10. In essence, plaintiff urges the adoption of the conclusions Dr. Williams reached, conclusions which relied not on Dr. Williams' medical knowledge, but his assessment of plaintiff's ability to find work "given his lack of education or other skills[.]" <u>Id.</u> (quoting Tr. 480). These are precisely the type of conclusions which are not entitled to deference under sections 404.1527(d)(1) and (d)(3). The SSA, not an individual doctor, is "responsible for making the determination or decision about whether you meet the <u>statutory definition</u> of disability." 20 C.F.R. §404.1527(d)(1). (emphasis added).

The Court further concludes that the ALJ sufficiently addressed the relevant factors in determining the proper weight to assign the May 2016 Report.

> If the treating source's opinion is not given
> controlling weight, the ALJ considers the following
> factors when deciding how much weight to give the
> opinion: length of treatment relationship, frequency of
> examination, nature and extent of the treatment
> relationship, relevant evidence used to support the
> opinion, consistency of the opinion with the entire
> record, and the expertise and specialized knowledge of
> the source. See 20 C.F.R. §§404.1527(c)(2)-(6); SSR 96-
> 2P, 1996 WL 374188, at *2; see also Selian v. Astrue,
> 708 F.3d 409, 418 (2d Cir. 2013) (per curiam) (setting
> forth the factors an ALJ must consider when evaluating
> opinion evidence). After considering these factors, the
> ALJ must "give good reasons" for the weight he [or she]
> affords to the treating source's opinion.

Berg v. Colvin, No. 3:14CV01042(SALM), 2016 WL 53823, at *4 (D. Conn. Jan. 5, 2016). The Second Circuit does not require a "slavish recitation of each and every factor [of 20 C.F.R. §404.1527(c)] where the ALJ's reasoning and adherence to the regulation are clear." Atwater v. Astrue, 512 F. App'x 67, 70 (2d Cir. 2013).

Plaintiff argues that these factors were insufficiently discussed, focusing on the length of plaintiff's treatment relationship with Dr. Williams, and Dr. Williams' specialization as an orthopedic surgeon. The ALJ expressly considered the "relevant evidence used to support the opinion, consistency of the opinion with the entire record," Berg, 2016 WL 53823, at *4, in giving little weight to Dr. Williams' May 2016 Report. See Tr. 36. From the rest of the ALJ's decision, it is apparent that she also considered the remaining factors. Indeed, the ALJ discussed Dr. Williams' treatment records numerous times,

specifically citing to records from throughout the period of his treatment of plaintiff, in significant detail. See Tr. 32-36. The ALJ specifically noted that Dr. Williams performed multiple surgeries on plaintiff, and that he had been treating plaintiff regularly since 2006. See Tr. 32 (noting that plaintiff treated with Dr. Williams in 2006); Tr. 34 (noting Dr. Williams performed surgery on plaintiff in 2009); Tr. 36 (evaluating Dr. Williams' opinions and treatment notes from 2006, 2007, 2008, and 2009).

The record supports the ALJ's conclusion that the May 2016 Report was inconsistent with the evidence as a whole and not adequately supported by the record. In so doing, the ALJ properly considered Dr. Williams' expertise and treating relationship with plaintiff, thus applying all of the factors of 20 C.F.R. §404.1527(c)(2)-(6). As discussed above, Dr. Williams' conclusions that plaintiff was disabled are not entitled to weight, see 20 C.F.R. §404.1527(d)(1), (d)(3), and those conclusions were undermined by Dr. Williams' own statements indicating that plaintiff could do work other than his past work, see Tr. 36. The ALJ repeatedly relied, throughout her ruling, on Dr. Williams' contemporaneous treatment notes describing plaintiff's treatment and functional abilities. See Tr. 32, 34. As the ALJ also noted, Dr. Williams' familiarity with social security regulations was never established, see id.,

further weighing against adoption of his conclusory opinions on
matters reserved to the Commissioner, see 20 C.F.R.
§404.1527(c)(6).

Accordingly, the Court concludes that the ALJ's assignment
of little weight to Dr. Williams' May 2016 Report was not error.

### C. Application of SSR 02-1p

Plaintiff contends the ALJ erred in her application of SSR
02-1p, which provides guidance regarding the impact of obesity
in all five steps of the evaluation process. See SSR 02-1p, 2002
WL 34686281 (S.S.A. Sept. 12, 2002). Plaintiff alleges that the
ALJ's error impacts her analysis at step three and remaining
steps.[8] See Doc. #27-1 at 6-9. The Commissioner contends that the
ALJ's repeated discussion of plaintiff's obesity in weighing
medical evidence was legally sufficient, and that "[p]laintiff
does not appear to point to any specific functional limitations
resulting from obesity that are not already included in the
ALJ's RFC finding." Doc. #33 at 24; see id. at 22-23.

In considering the combined effects of plaintiff's
impairments, "obesity can rise to the level of a disabling
impairment under certain circumstances -- generally speaking,
when it increases the severity of coexisting impairments,
particularly those affecting the musculoskeletal, cardiovascular

---

[8] The ALJ concluded that obesity was one of plaintiff's severe
impairments at step two. See Tr. 29.

and respiratory systems." Crossman v. Astrue, 783 F. Supp. 2d
300, 309 (D. Conn. 2010) (emphasis added). "Obesity alone can
also be a medically equivalent listed impairment if it results
in an inability to ambulate effectively." Id. (citation and
quotation marks omitted) (emphasis added).

"[T]he ALJ is required to consider the effects of obesity
in combination with other impairments throughout the five-step
evaluation process." Id. However, the ALJ "will not make
assumptions about the severity or functional effects of obesity
combined with other impairments." SSR 02-1p, 2002 WL 34686281 at
*6. "Obesity in combination with another impairment may or may
not increase the severity or functional limitations of the other
impairment. We will evaluate each case based on the information
in the case record." Id.

### 1. Impact of Obesity on Plaintiff's RFC

With regard to his RFC, "plaintiff submits that a residual
functional capacity that includes occasional climbing of stairs,
balancing and stooping, is inconsistent with a failed total knee
replacement and morbid obesity." Doc. #27-1 at 9. Plaintiff also
argues that the ALJ's discussion of Dr. Saberski's March 2009
report (Tr. 468-472) is a mischaracterization, requiring remand.
See id. at 8-9.

First, the Court notes that none of the jobs identified by
the VE and relied upon by the ALJ require any climbing of

stairs, balancing or stooping. See Tr. 38; Dep't of Labor,

Selected Characteristics of Occupations Defined in the Revised

Dictionary of Occupational Titles 135 (1993) (Painter, DOT Code

735.687-018, Climbing, Not Present; Balancing, Not Present;

Stooping, Not Present); id. at 302 (Jewel Stringer, DOT Code

770.687-026, same); id. at 46 (Surveillance-System Monitor, DOT

Code 379.367-010, same); id. at 238 (Grinding-Machine Operator,

Automatic, DOT Code 690.685-194, same); see also id. at ID-2

(defining abbreviations used in volume). Accordingly, any

alleged error regarding plaintiff's RFC with respect to climbing

stairs, balancing, or stooping would be harmless.

Plaintiff's argument regarding RFC is also inconsistent

with his own representations regarding his functional abilities

during the period in question. As noted by the ALJ, plaintiff

testified that, while his ability to climb stairs has

deteriorated over time, he was able to climb stairs during the

relevant period. See Tr. 30, 70-71. Even at the time of the

hearing, plaintiff was able to drive and ride in a car, see Tr.

296, feed his cats, see Tr. 293, help with dishes, see Tr. 296,

and go grocery shopping in a seated position (using a scooter)

for over an hour on a regular basis, see Tr. 298.

The ALJ summarized Dr. Saberski's report as follows:

In March 2009, the claimant treated with Lloyd Saberski,
M.D., and he found that the claimant's knee strength
appeared to be good. He was able to ambulate and carry

his weight but he had pain diffusely. (Exhibit 3F at 2).
He discussed weaning the claimant off his OxyContin.
(Exhibit 4F at 1). He opined that the claimant "had a
work capacity" but did not indicate the work capacity.
(Exhibit 3F at 4).

Tr. 34.[9] Plaintiff asserts that Dr. Saberski's report establishes
that

the peculiar character of Mr. Demars's morbid obesity
was such that it affected his right lower extremity more
than any other part of his body, in that it restricted
venous and lymphatic in the right leg while he was
sitting ([Tr.] 468-470). This is precisely the type of
evidence for which SSR 02-1p was designed to address.

Doc. #27-1 at 9 (sic). Plaintiff, however, does not challenge
the ALJ's RFC determination with regard to his ability to sit.[10]
As discussed above, he challenges the ALJ's determination that
plaintiff could occasionally climb stairs, balance, or stoop.

With regard to the ALJ's characterization of Dr. Saberski's
report, the ALJ is empowered to resolve ambiguities in the
record, and her resolution is entitled to deference.[11] See Cage

---

[9] The reference to Exhibit "4F at 1" in this paragraph appears to
be a typographical error. Tr. 34. Exhibit 4F is comprised of
records prepared by Dr. Williams, not Dr. Saberski. See Tr. 477-
97. The report to which the ALJ refers is contained in exhibit
3F (Tr. 468-72); Dr. Saberski "discussed weaning the claimant
off his OxyContin[]" on page 3 of that exhibit. Tr. 470.

[10] As discussed above, plaintiff did argue that the ALJ erred in
not affording controlling weight to Dr. Williams' lower
extremities impairment questionnaire, which indicates that
plaintiff can sit for zero hours during an eight-hour work day.
See Doc. #27-1 at 9-12.

[11] Dr. Saberski's report, unlike the report of Dr. Williams, does
not provide functional assessments to which plaintiff asserts

v. Comm'r of Soc. Sec., 692 F.3d 118, 122 (2d Cir. 2012) ("[W]e defer to the Commissioner's resolution of conflicting evidence."); Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.").

Plaintiff acknowledges that the ALJ's statements regarding the report are factually accurate, with the exception of the ALJ's statement that the report reflects that plaintiff "had a work capacity[.]" Tr. 34. The plaintiff is correct that this is an error in the ALJ's decision. While those words do appear in Dr. Saberski's report, the quotation by the ALJ does not accurately reflect the context in which those words appear: "At this time I do not believe Mr. Demars has a work capacity, given his pain in the sitting position and his need for OxyContin. This can change, and I certainly hope it can change with a successful program." Tr. 471.

Dr. Saberski's conclusion that plaintiff could not work is not entitled to deference. See 20 C.F.R. §404.1527(d)(1), (d)(3). Furthermore, Dr. Saberski's conclusions regarding the relevance of plaintiff's "need for OxyContin" are undermined by

---

controlling weight should have been given. Rather, plaintiff argues that in her determination of plaintiff's RFC, the ALJ gave less than a "fair reading of the entire report" because the ALJ did not come to the conclusion plaintiff urges, that is, that plaintiff "did not have meaningful use of the knee joint." Doc. #27-1 at 8.

his own statement elsewhere that plaintiff was "not impaired from the medication" and his recommendation to take plaintiff off the medication because it did "not appear to be increasing function or appreciably decreasing pain." Tr. 468, 470. These statements undermine the contention that plaintiff could not perform any work, as opposed to only his past work as a truck driver, until he was successfully weaned off his medication.

The ALJ acknowledged plaintiff's self-reported complaints of pain as outlined in the report. See Tr. 34. As the ALJ noted, other physicians opined that plaintiff "had no pain at rest." Tr. 33. Plaintiff's argument that Dr. Saberski's report could be interpreted in other ways is unavailing because "whether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision." Bonet ex rel. T.B., 523 F. App'x at 59. The Court finds that the ALJ did not commit reversible error in her discussion of Dr. Saberski's report, nor in her evaluation of SSR 02-1p in determining plaintiff's RFC.

## 2. Impact of Obesity on Weight Assigned to Medical Evidence Generally

Plaintiff argues that many of his physicians documented that his obesity had damaging effects on his right knee, and that the ALJ's brief evaluation "ignored" some of that analysis in a way that "falls well short of the SSA policy requiring the

ALJ to evaluate obesity and its effects on plaintiff's functioning." Doc. #27-1 at 9; <u>see</u> <u>also</u> <u>id.</u> at 7-8.

As discussed above, The ALJ specifically noted that plaintiff "was able to ambulate and carry his weight." Tr. 34. "The claimant's weight, including the impact on his ability to ambulate as well as his other body systems, has been considered within the functional limitations determined herein. (Exhibit 3F at 2)." Tr. 35. The records cited to by the ALJ make repeated mention of plaintiff's obesity. This includes Dr. Saberski's March 2009 report (identified at the hearing as Exhibit 3F), which stated that plaintiff "is certainly able to ambulate and carry his 322 pounds[.]" Tr. 469. The ALJ also found plaintiff's obesity to be a severe impairment, acknowledging that it "significantly limits his physical or mental ability to do basic work activities." <u>Berry</u>, 675 F.2d at 467 (per curiam); <u>see</u> Tr. 29.

While "[i]t is certainly best practices to explicitly consider the impact of obesity on Plaintiff's functional limitations in light of the other identified impairments, [] courts have upheld an ALJ's general reference to obesity's impact at Step Four." <u>Holt v. Colvin</u>, No. 16CV01971(VLB), 2018 WL 1293095, at *8 (D. Conn. Mar. 13, 2018) (collecting cases). Here, the ALJ did more than provide a general reference. She found plaintiff's obesity to be a severe impairment, and, as

discussed in detail above, specifically evaluated the impact of plaintiff's obesity both on his ability to ambulate and other functional limitations. <u>See</u> Tr. 29, 34-35. The Commissioner is correct that "[p]laintiff does not appear to point to any specific <u>functional limitations</u> resulting from obesity that are not already included in the ALJ's RFC finding." Doc. #33 at 24 (emphasis added). Accordingly, the Court concludes that the ALJ properly applied SSR 02-1p at all steps of her evaluation.

## VI. <u>CONCLUSION</u>

For the reasons set forth herein, plaintiff's Motion to Reverse or Remand **[Doc. #27]** is **DENIED**, and defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #33]** is **GRANTED**.

SO ORDERED at New Haven, Connecticut, this 31st day of March, 2019.

_____/s/_____
HON. SARAH A. L. MERRIAM
UNITED STATES MAGISTRATE JUDGE